# No. 13-70025

## IN THE

# United States Court of Appeals

### FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

- against -

**SHERMAN LAMONT FIELDS,**

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS, WACO DIVISION (W-09-CV-009, W-01-CR-164)

## DEFENDANT-APPELLANT SHERMAN LAMONT FIELDS' PETITION FOR *EN BANC* REHEARING

**THIS IS A CAPITAL CASE**

JEFFREY ELLIS
OREGON CAPITAL RESOURCE CENTER
621 SW Morrison St., Suite 1025
Portland, OR  97205
(206) 218-7076

PETER J. ISAJIW
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY  10281
(212) 504-6000

*Attorneys for Defendant-Appellant*
*Sherman Lamont Fields*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1, the undersigned counsel of record certifies that the following listed persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    APPELLANT: Sherman Lamont Fields

2.    APPELLANT'S ATTORNEY: Jeffrey Ellis, Oregon Capital Resource Center, 621 SW Morrison Street, Suite 1025, Portland, OR  97025

3.    APPELLANT'S PRO BONO ATTORNEY: Peter J. Isajiw, Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, NY  10281

4.    APPELLEE: United States of America

5.    APPELLEE'S ATTORNEY: Joseph H. Gay, Jr., United States Attorney, Western District of Texas, 601 N.W. Loop 410, Suite 600, San Antonio, TX  78216

6.    APPELLEE'S ATTORNEY: Jennifer Sheffield Freel, United States Attorney, Western District of Texas, 816 Congress Avenue, Suite 1000, Austin, TX  78701

7.    APPELLEE'S ATTORNEY: Mark L. Frazier, United States Attorney, Western District of Texas, 800 Franklin, Suite 280, Waco, TX  76701

/s/ Jeffrey Ellis
Jeffrey Ellis
Peter J. Isajiw
*Attorneys of Record for Mr. Fields*

**STATEMENT OF COUNSEL**
**PURSUANT TO FED. R. APP. P. 35(b)(1)**

This proceeding is appropriate for *en banc* review because it involves the following questions of exceptional importance:

> Whether it was an error in this 28 U.S.C. § 2255 ("§ 2255") proceeding to deny a Certificate of Appealability where the decision acknowledged that Fields' court-appointed trial counsel failed to discover and presented "no evidence of Fields' bipolar disorder or [Posttraumatic Stress Disorder ("PTSD")], nor of Fields' family history of mental illness" to the jury, but then held that Fields could not have been prejudiced because evidence of mental illness is "double-edged" and can lead a jury to conclude that a defendant is a future danger, overlooking Fields' otherwise uncontested evidence that proper treatment could decrease the risk of Fields committing future acts of violence?

> In this § 2255 proceeding, where a panel of this Court (the "Panel") approved of the district court making credibility determinations and resolving issues of disputed fact without an evidentiary hearing, does the Panel's decision conflict with *Machibroda v. United States*, 368 U.S. 487 (1962), in which the Supreme Court ruled that it is error for a district court to make findings on controverted issues of fact in a § 2255 proceeding without a hearing, and *May v. Collins*, 955 F.2d 299 (5th Cir. 1992), in which this Circuit held that a hearing is required in § 2255 proceedings when affidavits submitted by the petitioner and the government raise factual disputes?

# **TABLE OF CONTENTS**

**PAGE**

CERTIFICATE OF INTERESTED PERSONS ......................................................... i

STATEMENT OF COUNSEL PURSUANT TO FED. R. APP. P. 35(b)(1) ......... ii

TABLE OF AUTHORITIES ................................................................................ iv

STATEMENT OF ISSUE PRESENTED FOR *EN BANC* REVIEW .......................1

STATEMENT OF THE COURSE OF PROCEEDINGS .........................................2

STATEMENT OF FACTS ....................................................................................4

ARGUMENT .....................................................................................................6

I.    THE PANEL'S DECISION THAT MENTAL HEALTH EVIDENCE IS "DOUBLE-EDGED" CATEGORICALLY AND UNCONSTITUTIONALLY PRECLUDES THE INTRODUCTION OF SUCH MENTAL HEALTH EVIDENCE IN SUPPORT OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ............................7

II.   THE PANEL ERRED BY FAILING TO REMAND FOR AN EVIDENTIARY HEARING .......................................................................12

CONCLUSION ...............................................................................................15

CERTIFICATE FOR ECF PLEADINGS

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES:**

*Abdul-Kabir v. Quarterman*,
550 U.S. 233 (2007) ............................................................................. 11

*Bracy v. Gramley*,
520 U.S. 899 (1997) ............................................................................. 14

*Brewer v. Quarterman*,
550 U.S. 286 (2007) ............................................................................. 11

*Coble v. Texas*,
330 S.W.3d 253 (Tex. Crim. App. 2010) ............................................. 11

*Fontaine v. United States*,
411 U.S. 213 (1973) ............................................................................. 13

*Gobert v. Texas*,
2011 WL 5881601 (Tex. Crim. App. Nov. 23, 2011) .......................... 11

*Hall v. Quarterman*,
534 F.3d 365 (5th Cir. 2008) ............................................................... 14

*Machibroda v. United States*,
368 U.S. 487 (1962) ...................................................................... ii, 13

*May v. Collins*,
955 F.2d 299 (5th Cir. 1992) .................................................................. ii

*Miller-El v. Cockrell*,
537 U.S. 322 (2003) ............................................................................. 13

*Penry v. Lynaugh*,
492 U.S. 302 (1989) ............................................................................. 10

*Porter v. McCollum*,
558 U.S. 30 (2009) ................................................................................. 8

**PAGE(S)**

*Rompilla v. Beard*,
    545 U.S. 374 (2005) ...................................................................... 8-9

*Schriro v. Landrigan*,
    550 U.S. 465 (2007) ...................................................................... 12

*Smith v. Texas*,
    543 U.S. 37 (2004) ........................................................................ 11

*Smith v. Texas*,
    550 U.S. 297 (2007) ...................................................................... 11

*Strickland v. Washington*,
    466 U.S. 668 (1984) ........................................................................ 7

*Tennard v. Dretke*,
    542 U.S. 274 (2004) ...................................................................... 11

*United States v. Fields*,
    483 F.3d 313 (5th Cir. 2007) ......................................................... 2

*Wiggins v. Smith*,
    539 U.S. 510 (2003) ..................................................................... 8, 9

*Williams v. Taylor*,
    529 U.S. 362 (2000) ..................................................................... 8. 9

**CASES:**

Fed. R. App. P. 35(a)(2) ...................................................................... 6

28 U.S.C. § 2255(b) ...................................................................... 12, 14

Tex. Code Crim. Proc. Ann. art. 37.071 § 2(b) (West 1981 & Supp. 1989) .......... 10

DRAFT
PRIVILEGED & CONFIDENTIAL
ATTORNEY WORK PRODUCT

## STATEMENT OF ISSUE PRESENTED FOR *EN BANC* REVIEW

Pursuant to Federal Rule of Appellate Procedure 35 and Fifth Circuit Rule 35, Defendant-Appellant Sherman Lamont Fields ("Fields"), through his undersigned counsel, hereby petitions the Court for *en banc* review of the denial of his request for a Certificate of Appealability on the following issues:

(1)    Whether the Panel erred in holding that reasonable jurists could not debate whether Fields established prejudice resulting from trial counsel's failure to conduct an adequate investigation as to Fields' mental health because mental health evidence is "double-edged."

(2)    Whether the Panel erred in holding that reasonable jurists could not debate whether Fields raised numerous colorable claims of error and factual disputes, supported with voluminous new evidence, that could not be conclusively resolved on the record without discovery or an evidentiary hearing.

## STATEMENT OF THE COURSE OF PROCEEDINGS

In January 2004, Fields was convicted of escape and murder, among other counts, and was subsequently sentenced to death in the U.S. District Court for the Northern District of Texas.  Brief for Defendant-Appellant Sherman Lamont Fields, No. 13-70025 (Dkt. No. 00512440612) ("Br."), at 4.[1]  Fields proceeded *pro se* at the guilt phase of the trial.  This Court affirmed on direct appeal, *United States v. Fields*, 483 F.3d 313 (5th Cir. 2007), and the U.S. Supreme Court subsequently denied a petition for a writ of *certiorari*.  *Id.* at 4-5.  In January 2009, Fields filed a motion for a new trial and to vacate his conviction and death sentence pursuant to § 2255, and amended his motion in April 2010.  *Id.* at 5.  Fields challenged his conviction and death sentence on multiple grounds, supporting his claims with voluminous new evidence that was not presented at trial.  The District Court denied Fields' motion in its entirety, denied his request for discovery and an evidentiary hearing, denied a subsequent motion for reconsideration, and *sua sponte* denied Fields' motion seeking a Certificate of Appealability ("COA").  *Id.* at 6.

On August 1, 2013, Fields filed a timely notice of appeal of the District Court's denial of Fields' § 2255 petition to this Court.  Dkt. No. 00512335473.  On November 13, 2013, Fields filed a motion seeking a COA and a brief in support thereof.  Dkt. Nos. 00512440609 (Motion), 00512440612 (Br.).

After hearing oral argument, on July 30, 2014 the Panel denied Fields'

---

[1]  All "Br. at ___" references are to the physical pages of the brief, not the sequential pagination assigned by the ECF system.

motion seeking a COA on all grounds.  Dkt. No. 00512716717 ("July 30 Op.").
The Panel found that no reasonable jurist could debate any of the District Court's
conclusions.  Specifically, among other rulings, the Panel rejected Fields' § 2255
claims that his trial counsel's representation was constitutionally defective because
trial counsel failed to investigate and introduce mitigating evidence of Fields'
debilitating mental illness.  Despite the Panel's admission that "trial counsel
presented no evidence of Fields' bipolar disorder or PTSD, nor of Fields' family
history of mental illness," the Panel concluded that such evidence could not have
prejudiced Fields, because "[e]vidence of mental illness can . . . be 'double-edged,"
since it could "lead a jury to conclude that a defendant poses a future risk of
violence."  July 30 Op. at 16-17.  The Panel also rejected Fields' request for
discovery and an evidentiary hearing to present his voluminous new evidence and
further develop his claims, including a claim that Fields' decision to proceed *pro se*
was a direct result of an irrational belief that court-appointed counsel was
conspiring to kill him, and therefore the District Court's decision allowing Fields
to do so was constitutionally invalid.

The Panel denied Fields' request for discovery and an evidentiary hearing,
holding that "reasonable jurists would not debate that 'the record and Fields'
motion are adequate to dispose of each of Fields' claims,'" and that Fields had "not
provided specific allegations . . . demonstrat[ing] his entitlement to relief if the
facts are fully developed."  July 30 Op. at 60-61.  Despite this holding, the Panel
denied several claims, including the competency to proceed *pro se* claim, in part on
the basis that Fields did not submit sufficient evidentiary support for his
allegations.  *See id.* at 34-35 (psychiatrist's declaration submitted in support of

-3-

Fields' § 2255 claims was "not sufficient to establish that the district court's . . . decision that Fields was competent to waive counsel was debatable" while childhood diagnoses evidencing Fields' bipolar disorder and PTSD and inmate records dated a mere six months prior to trial were likewise insufficient to "cause reasonable jurists to disagree . . . about Fields' competency at the time of trial"). Fields now seeks *en banc* rehearing with respect to the claims identified below.

## STATEMENT OF FACTS

In May 2003, Fields was charged under a seven-count indictment, including for the murder of his girlfriend, Suncerey Coleman. July 30 Op. at 2. At his trial in early 2004, Fields represented himself *pro se,* as his court-appointed counsel acted as standby counsel. He pled not guilty to each count and argued that he was in fact innocent of the charged crimes, a position which Fields has consistently maintained to this day. *Id.* at 3. The jury rejected his defense and found him guilty on all counts. *Id.*

During the penalty phase of trial, the Government presented evidence designed to demonstrate that Fields would commit future bad acts, even if he was imprisoned. The Government's presentation included evidence of Fields' past crimes and behaviors, as well as the purported "expert" testimony of Dr. Richard Coons, who opined that Fields was without a conscience and was, essentially, a sociopath. Dr. Coons never examined or even spoke to Fields in connection with rendering his purportedly scientific opinion. During cross-examination, Dr. Coons testified that Fields' past bad acts demonstrated that he suffered from an anti-social personality disorder, a condition that was untreatable. In fact Fields suffers from

bipolar disorder and PTSD, diagnoses confirmed by Dr. George Woods. Both bipolar disorder and PTSD are imminently treatable conditions, and had the jury been aware of these diagnoses and Fields' family history, aspects of Fields' behavior which were presented as aggravating would have been contextualized and likely would have had a mitigating effect. The defense, however, presented no evidence of Fields' history of mental illness or his family's. The jury subsequently sentenced Fields to death in February 2004 and he has been on death row ever since.

Fields' § 2255 petition and present appeal assert, *inter alia*, that he was denied his constitutional right to a fair trial because the District Court permitted Fields to represent himself despite his incompetence to do so. Br. at 12-14, 94-107. In support of his § 2255 petition, Fields presented evidence that he suffered from serious mental illness.

Fields' family tree is replete with an astounding amount of documented mental illness or mental retardation. *See* ROA.1374. Fields was born into a poor family in Waco, Texas and his family had been victimized by racial intimidation and animus for generations, enduring brutal mistreatment during a period of intense racial violence in central Texas. Br. at 7-9. Fields' upbringing was characterized by shocking loss, including the violent deaths of numerous close friends and family members. *See* ROA.1375; *see also* Br. at 9-12. Complicating his profoundly tragic upbringing, and as a result of it, Fields was diagnosed with severe PTSD and atypical bipolar disorder as a teenager, and has been prone to paranoia and delusions ever since. Br. at 11-12. Fields has suffered from these conditions throughout his adult life, including during his trial and subsequent

proceedings. *Id.* Much of Fields' behavior is are attributable to this history of untreated mental illness. In connection with his § 2255 petition, Fields presented evidence, including a Declaration from Dr. Woods (ROA.1414-56), the only psychiatrist to adequately examine Fields in connection with these proceedings, that his mental illness can be treated, effectively reducing the risk that he will commit future acts of violence.

## ARGUMENT

A petition for rehearing *en banc* may be granted if "the proceeding involves a question of exceptional importance." Fed. R. App. P. 35(a)(2). This Court should grant *en banc* review to consider the Panel's holding that, for purposes of an ineffective assistance of counsel claim, a capital defendant cannot show prejudice from counsel's failure to investigate and present evidence of mental illness during the penalty phase of a criminal trial.[2] The Panel's decision was flawed for two significant reasons. *First*, the Panel's conclusion that Fields failed to establish prejudice is erroneously based on the notion that evidence of mental illness is *always* "double-edged" and therefore must be discounted in the prejudice inquiry because of its potentially aggravating aspects. *Second*, the Panel failed to consider Fields' uncontested expert opinions that, if Fields' mental illness was properly treated, his risk of committing future acts of violence would significantly decrease and that, if presented to the jury, such evidence would likely have had a mitigating effect by contextualizing otherwise aggravating behavior. In addition, this Court should grant *en banc* review to consider the Panel's holding that Fields

---

[2] Fields preserves his rights of appeal to the Panel's Opinion on all other matters.

was not entitled to discovery or an evidentiary hearing to develop a sufficient factual record to resolve his § 2255 claims and demonstrate his entitlement to relief.

**I.      THE PANEL'S DECISION THAT MENTAL HEALTH EVIDENCE IS "DOUBLE-EDGED" CATEGORICALLY AND UNCONSTITUTIONALLY PRECLUDES THE INTRODUCTION OF SUCH MENTAL HEALTH EVIDENCE IN SUPPORT OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS**

To establish a claim for ineffective assistance of counsel, a petitioner must first show that counsel's performance was deficient, and then demonstrate that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In its Opinion denying Fields' COA, the Panel "[a]ssum[ed] without deciding that counsels' performance was deficient," but nonetheless denied Fields' request for a COA on his ineffective assistance claims because the Panel held that Fields could not establish prejudice. July 30 Op. at 16.

The Panel held that Fields could not have been prejudiced by his counsel's deficient failure to investigate and introduce his history of treatable mental illness because "such evidence can also be 'double-edged' . . . since it can lead a jury to conclude that a defendant poses a future risk of violence." July 30 Op. at 17. The Panel reached this conclusion notwithstanding its acknowledgement that "[e]vidence of mental illness can be mitigating," and that "[w]ith respect to the mental health evidence . . . trial counsel presented no evidence of Fields' bipolar disorder or PTSD, nor of Fields' family history of mental illness (beyond the mention of Fields' mother's mental retardation, which the testimony suggested may derive, in part, from her being shot in the head)." *Id.* at 16-17. The Panel also

noted that "[i]n Fields' habeas motion, he presented evidence of diagnoses of bipolar disorder and [PTSD], and a family history of mental illness." *Id.* at 16. Contrary to the Panel decision, here evidence of these psychiatric disorders is exclusively mitigating in assessing prejudice and has been regarded as such by the Supreme Court. *See Porter v. McCollum*, 558 U.S. 30, 42-44 (2009).

Pursuant to the Supreme Court's well-established Sixth Amendment jurisprudence, a proper *Strickland* prejudice inquiry focuses on the ultimate question of whether death is an appropriate penalty, given counsel's deficient performance: whether evidence counsel failed to uncover or introduce could have provided a sufficient explanation of the defendant's circumstances to mitigate, or offset, his criminal actions. *See Rompilla v. Beard*, 545 U.S. 374, 392-93 (2005); *Wiggins v. Smith*, 539 U.S. 510, 535 (2003); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). Under this framework, *Strickland* prejudice is properly evaluated by comparing mitigating evidence introduced by the petitioner against the aggravating aspects of criminal behavior, such as the circumstances of the crime and other bad acts.

The United States Supreme Court has never suggested that courts applying *Strickland*'s prejudice standard should consider evidence of mental illness as an aggravating factor or a risk of future dangerousness, particularly where, as here, the record contains evidence to the contrary. Rather, the United States Supreme Court has granted Sixth Amendment relief in cases involving powerful mitigating evidence similar to Fields' without suggesting that such evidence is "double-edged." *See, e.g.*, *Rompilla*, 545 U.S. at 392-93 (finding prejudice based on counsel's failure to present evidence of brain damage, fetal alcohol syndrome, low

intelligence, and difficult family background); *Wiggins*, 539 U.S. at 535 (finding prejudice based on counsel's failure to present evidence of severe privation, including physical torment and sexual molestation). In *Williams*, the Supreme Court held that a failure to find *Strickland* prejudice was objectively unreasonable because evidence of mental retardation and childhood abuse, among other mitigating evidence, may have significantly altered the picture of the defendant's moral blameworthiness, notwithstanding the Court's recognition that such evidence might not have undermined or rebutted the state's case regarding his future dangerousness. 529 U.S. at 398 (while the defendant's mitigating evidence "may not have overcome a finding of future dangerousness, the graphic description of [the defendant's] childhood, filled with abuse and privation, or the reality that he was 'borderline mentally retarded,' might well have influenced the jury's appraisal of his moral culpability"). Accordingly, the possibility that a defendant may, at some time in the future, exhibit symptoms as result of his mental illness is not proper grounds under *Strickland* for courts to absolutely discount the value of mental illness evidence to explain and mitigate a criminal defendant's prior bad acts.

*En banc* review is necessary and should be granted to re-examine the *Fields* Opinion. The Panel's decision turns this Supreme Court Sixth Amendment jurisprudence on its head, and its application to future cases would routinely and unjustifiably treat the most powerful forms of mitigating evidence as "aggravating" in assessing prejudice. In the Panel's view, any failure by counsel to discover and present mitigating evidence relating to a defendant's mental illness is not likely to be deemed prejudicial because such types of evidence could potentially alert jurors

to the defendant's impaired self-control and alternatively be characterized as an aggravating factor or a risk of future dangerousness. Under this upside-down approach, the most important and powerful forms of mitigation evidence—*i.e.,* evidence of mental illness demonstrating extraordinary impairment—become the types of evidence *least* likely to establish prejudice. Such an approach not only denies defendants, such as Mr. Fields, relief in cases of manifest injustice where trial counsel's unprofessional conduct prevents the discovery and presentation of powerful evidence of reduced moral culpability, it also sends an inappropriate and inaccurate signal that mitigating evidence such as psychiatric impairment or mental deficiency is somehow a reason for executing a defendant rather than withholding the death penalty.[3]

---

[3]  One possible reason for the Panel's analytical error is the peculiar history of a Texas capital sentencing statute, and the Supreme Court's decision in *Penry v. Lynaugh*, 492 U.S. 302 (1989), interpreting that pre-1991 law. *See* Tex. Code Crim. Proc. Ann. art. 37.071 § 2(b) (West 1981 & Supp. 1989). Under that state statute, Texas juries were required to assess all evidence in a capital trial by answering the question of whether "whether there [was] a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." *Id.* In *Penry*, the Supreme Court used the term "two-edged sword" in describing a crucial flaw in such a sentencing statute—*i.e.,* that many of the most important types of mitigating evidence are "double-edged" in the sense that evidence supporting a finding of diminished moral culpability also tends to support an inference of future dangerousness, and such a statute creates an unacceptable risk that such mitigating evidence will lead to a death sentence. *See* 492 U.S. at 324. However, nothing about the *Penry* Court's observation regarding "double-edged" evidence has any implication beyond the former Texas statute, and the *Penry* Court never suggested that such evidence was "aggravating" in the sense that mental illness and history of abuse could reasonably be viewed as making a death sentence more appropriate. The Panel's analytical error described above in discounting Fields' evidence as "double-edged" reinforces the worst part of the former Texas sentencing scheme, which treated mentally ill defendants as *more* deserving of execution than defendants who killed without such a potentially mitigating explanation. The Panel's legal error here, potentially resulting from this misunderstanding, imperils the very same values underlying the Eighth Amendment right to individualization that led the Supreme Court repeatedly to reverse death sentences in cases where a defendant's mitigating evidence could be considered only through the lens of future

-10-

The Panel's conclusion that "reasonable jurists would not debate the district court's holding that the verdict would not have changed even had the jury heard evidence of Fields' mental illnesses" is not supported by the evidence presented by the Government at trial. At trial, the Government argued that Fields' prior bad acts were predictive of future bad acts because they were attributable to an *untreatable* personality disorder, rather than a *treatable* mental illness. ROA.711. For example, the Government's "expert" (Dr. Coons) testified that Mr. Fields was a high risk to commit future criminal acts because his past acts were attributable to a permanent and untreatable personality defect. ROA.163.[4] Likewise, on cross-examination, the Government elicited testimony from Fields' defense expert that Fields had been previously labeled as anti-social and that there was no effective treatment for that type of personality disorder. In other words, according to the Government, Fields deserved to die because his prior bad acts were attributable to his dangerous character, rather than a treatable mental illness. Fields' trial counsel failed to discover or introduce any evidence that Fields actually suffered from treatable mental illness that could have rebutted the Government's claim.

In contrast, Fields presented evidence in support of his § 2255 petition linking much of the behavior relied on by the Government at trial to untreated mental illness. ROA.733. Fields also cited in his COA Brief a sworn statement

---

dangerousness. *See Smith v. Texas*, 550 U.S. 297 (2007); *Brewer v. Quarterman*, 550 U.S. 286 (2007); *Abdul-Kabir v. Quarterman*, 550 U.S. 233 (2007); *Smith v. Texas*, 543 U.S. 37 (2004); *Tennard v. Dretke*, 542 U.S. 274 (2004).

[4]   Dr. Coons' methodology has been rejected by the American Psychiatric Association and recently renounced as inadmissible in two state court capital cases in the Texas Court of Criminal Appeals. *See* Br. at 130, 134-41 (*citing Coble v. Texas*, 330 S.W.3d 253, 279-80 (Tex. Crim. App. 2010); *Gobert v. Texas*, 2011 WL 5881601, at \*7 (Tex. Crim. App. Nov. 23, 2011)).

from an expert psychiatrist, Dr. Woods, demonstrating that Mr. Fields' mental illness could be treated in prison. Br. at 87 (*citing* ROA.1432 ¶ 92). The fact that Mr. Fields' past behavior is linked to a mental illness decreases his culpability for those acts. In addition, Dr. Woods noted that, when Fields was not too paranoid to accept treatment, he responded positively. ROA.1433 ¶ 93. In short, Fields' treatable mental illness decreases his culpability and lowers his risk of future dangerousness. Because the Panel decision fails to account for this and other evidence, *en banc* review is appropriate.

## II. THE PANEL ERRED BY FAILING TO REMAND FOR AN EVIDENTIARY HEARING

An *en banc* rehearing is also appropriate in this case because the Panel ruled that Fields was not entitled to discovery or an evidentiary hearing on any of his claims without "consider[ing] whether such a hearing could enable [Fields] to prove the petition's factual allegations, which if true, would entitle [Fields] to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The Panel correctly stated the applicable standard under § 2255 (July 30 Op. at 60): "Unless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon." 28 U.S.C. § 2255(b).

Notwithstanding this strong presumption in favor of a hearing and discovery, the Panel held that the record was "sufficient to dispose of each ground of relief," and that Fields had not "lead [the Panel] to believe he could demonstrate his entitlement to relief." July 30 Op. at 60-61. The Panel reached this conclusion without addressing the numerous factual disputes raised in Fields' § 2255 filings

(*see* Br. at 7-22, 49-91, 150-62), and its adoption of the District Court's factual findings resolving Fields' claims was contrary to § 2255 and well-established Supreme Court precedent. *See, e.g.*, *Miller-El v. Cockrell*, 537 U.S. 322, 342 (2003) (whether a COA shall issue depends on "the debatability of the underlying constitutional claim, not the resolution of that debate"); *Machibroda*, 368 U.S. at 494-95 (district court erred in resolving claim without a hearing as required by § 2255); *Fontaine v. United States,* 411 U.S. 213, 215 (1973) (remanding for a hearing where "we cannot conclude with the assurance required by the statutory standard . . . that under no circumstances could the petitioner establish facts warranting relief under § 2255").

For example, with respect to Fields' Sixth Amendment Claim discussed above, the Panel adopted the District Court's factual finding that no prejudice would result from trial counsel's failure to discover and present Fields' mental illness evidence without the benefit of a hearing to evaluate the impact of trial counsel's deficient investigation. As a result, to date no court has adequately weighed the voluminous mitigation evidence discovered by Fields' post-trial counsel against the aggravating acts presented to the jury at trial.

Additionally, the Panel held that reasonable jurists would not debate the District Court's determinations (again, made without the benefit of discovery or a hearing) that Fields was competent to waive counsel and represent himself.[5] *See* July 30 Op. at 34-35. The Panel identified several pieces of evidence introduced

---

[5]   Dr. Woods also opined that Fields' decision to proceed *pro se* was a direct result of his irrational belief that his court-appointed counsel was conspiring to kill him. *See* ROA.1436 ¶ 107.

by Fields in his § 2255 petition demonstrating that Fields suffered from mental illness both six months before and six years after his trial; however, it simply adopted the District Court's findings with respect to each piece of evidence and indicated that Fields has not presented evidence of incompetence at the time of his decision to proceed *pro se*, while simultaneously denying a hearing that would provide Fields with an opportunity to do so. *Id.* (referencing Dr. Woods' declaration, psychiatric evaluations of Fields as a teenager and Fields' inmate records six months prior to trial); *see also id.* at 60-61. If the Panel's decision is not reviewed *en banc*, then Fields' claims of incompetency will be rejected without any post-trial assessment of the evidence as to Fields' mental health at the time of his trial. Such a result is antithetical to both this Court's jurisprudence and the interests of justice. *See Hall v. Quarterman*, 534 F.3d 365, 390-91 (5th Cir. 2008) (an evidentiary hearing, rather than a paper review, is required to make fair and accurate determinations of fact in *habeas* cases). Likewise, the denial of Fields' requests for discovery and DNA testing (which would be conducted at Fields' expense) in order to support his claim of actual innocence is procedurally backwards. *See Bracy v. Gramley*, 520 U.S. 899, 909 (1997) ("'it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry'") (citation omitted).

Fields has made a substantial showing of the denial of several of his constitutional rights, and he has thus met the standard for an evidentiary hearing in a § 2255 proceeding. *See* 28 U.S.C. § 2255(b). As demonstrated in his § 2255 filings, Mr. Fields' trial and conviction are the direct result of a series of fundamental failures of the systems designed to safeguard his constitutional rights

and the integrity of the federal criminal trials in the search for truth.  Without this Court's intervention, these systemic failures will cost Mr. Fields his life, and undermine both the integrity of the federal judicial system and the notion that when the United States Government imposes the federal death penalty on one of its citizens, it does so fairly.  Mr. Fields seeks the modest remedy of a COA, so that he may present his claims for appeal to this Court or obtain an evidentiary hearing in which he may develop the factual record to further support his claims of prejudice suffered as a result of the constitutional errors that occurred during his trial.

## **CONCLUSION**

For the foregoing reasons, Fields respectfully requests that this Court grant his petition for rehearing *en banc* and grant his request for a COA, or remand to the District Court with directions to grant Fields' § 2255 petition or for discovery and an evidentiary hearing.

Dated:    September 15, 2014          Respectfully Submitted.

By:  /s/ Jeffrey Ellis
         Jeffrey Ellis

Oregon Capital Resource Center
621 SW Morrison St., Suite 1025
Portland, OR  97205
Telephone:  (206) 218-7076
Email:         JeffreyErwinEllis@gmail.com

Peter J. Isajiw
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY  10281
Telephone:  (212) 504-6000
E-mail:        Peter.Isajiw@cwt.com

*Attorneys for Mr. Fields*

## **CERTIFICATE FOR ECF PLEADINGS**

I hereby certify that: (1) required privacy redactions have been made pursuant to 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document pursuant to 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated:    September 15, 2014

/s/ Jeffrey Ellis
Jeffrey Ellis